UNITED STATES DISTRCT COURT
EASTERN DISTRCT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA, )
　)
Plaintiff, )
　)
v. )  **4:24CR646 MTS/RHH**
　)
KRISTINA HIGGINS, )
　)
Defendant. )

**FILED**

DEC 1 1 2024

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

## INDICTMENT

The Grand Jury charges that, at all times relevant to this Indictment:

### INTRODUCTION

1. Between September 2020 and January 2024, the defendant, **KRISTINA HIGGINS** ("Defendant Higgins"), carried out a fraud scheme through which she embezzled hundreds of thousands of dollars from the bank account of her employer (the "Company"). As the Company's General Manager during that time, Defendant Higgins was entrusted with access to the Company's bank account, including with unilateral authority to issue check payments from the account to pay the Company's business expenses. For three-plus years, Defendant Higgins abused her position of trust at the Company to enrich herself, in that she used a stamp to forge the signature of the Company's owner on more than 50 unauthorized checks that she issued from the Company's bank account to pay her personal credit card debt. As part of her fraud scheme, Defendant Higgins falsely represented that the Company had approved these unauthorized check payments, even though she knew that the Company had not approved any of the payments. Based on Defendant Higgins' false representations, the bank honored the unauthorized checks and deducted the amount of the checks—which, in total, exceeded $800,000—from the Company's bank account.

## BACKGROUND

2. Defendant Higgins resides in Ballwin, Missouri, within the Eastern District of Missouri.

3. Defendant Higgins worked for the Company for over a decade, including as the Company's General Manager between in or around September 2020 and in or around January 2024.

4. As the Company's General Manager, Defendant Higgins was entrusted with access to the Company's bank account at Carrollton Bank (the "Carrollton Bank Account"), which had an accountholder address in Fenton, Missouri, within the Eastern District of Missouri, where the Company is headquartered.

5. Carrollton Bank has branch locations in, among other places, the Eastern District of Missouri, and is a "financial institution" within the meaning of 18 U.S.C. § 20(1), in that its deposits are insured by the Federal Deposit Insurance Corporation.

6. Defendant Higgins maintained numerous credit card accounts with Capital One, including an account ending in 2822 (the "Capital One Account").

7. Defendant Higgins maintained numerous credit card accounts with J.P. Morgan Chase, including an account ending in 0758, an account ending in 4088, and an account ending in 6303 (the "Chase Accounts").

## COUNTS ONE THROUGH EIGHT
### (Bank Fraud: 18 U.S.C. § 1344)

8. The above paragraphs are hereby realleged and incorporated by reference.

9. Beginning no later than in or around September 2020, and continuing through at least in or around January 2024, in the Eastern District of Missouri and elsewhere, Defendant Higgins knowingly executed, and attempted to execute, a scheme and artifice to defraud a financial

institution, that is, Carrollton Bank, and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of Carrollton Bank, to wit, moneys and funds in the Company's Carrollton Bank Account, by means of material false and fraudulent pretenses, representations, and promises.

**A.  The Scheme**

It was part of the scheme that:

10. When Defendant Higgins was the Company's General Manager, she was the only Company employee with unilateral authority to issue check payments from the Company's Carrollton Bank Account.

11. In connection with her authority to issue check payments from the Company's Carrollton Bank Account, Defendant Higgins also had authority to use a stamp to sign the name of the Company's owner on the checks.

12. Defendant Higgins' authority to issue check payments from the Company's Carrollton Bank Account was limited to issuing checks for the purpose of paying business expenses that had been approved by the Company.

13. Defendant Higgins did not have authority to issue check payments from the Company's Carrollton Bank Account for the purpose of paying her personal credit card debt.

14. Despite not having authority to do so, between in or around September 2020 and in or around January 2024, Defendant Higgins issued checks from the Company's Carrollton Bank Account to pay for personal credit card debt that she owed on her Capital One Account and on her Chase Accounts.

15. When Defendant Higgins issued these unauthorized checks, she used a stamp to forge the signature of the Company's owner on the checks. By doing so, Defendant Higgins falsely

3

represented that the Company had approved the checks to be issued from its Carrollton Bank Account, even though she knew that the Company had not approved the issuance of any such checks.

16. In or around December 2022, the Company enrolled in Carrollton Bank's "positive pay" system. From that point forward, before Defendant Higgins issued a check from the Company's Carrollton Bank Account, she was required to submit payment information (*e.g.*, the payee, the date, and the amount of the check) to Carrollton Bank through the positive pay system. Carrollton Bank would not honor the check unless the payment information submitted by Defendant Higgins through the positive pay system matched the information that appeared on the check.

17. When Defendant Higgins submitted payment information through Carrollton Bank's positive pay system, she represented that the Company had approved the check payment to which the information related.

18. Between in or around December 2022 and in or around January 2024, Defendant Higgins submitted payment information through Carrollton Bank's positive pay system for unauthorized check payments from the Company's Carrollton Bank Account to her Capital One Account and to her Chase Accounts. In doing so, Defendant Higgins falsely represented to Carrollton Bank that the Company had approved check payments from its Carrollton Bank Account to her Capital One Account and to her Chase Accounts, even though she knew that the Company had not approved any such check payments.

19. Because the checks contained the signature of the Company's owner, and because the information on the checks matched the payment information that Defendant Higgins submitted

through the positive pay system, Carrollton Bank honored the checks and deducted the amount of the checks from the Company's Carrollton Bank Account.

20. Ultimately, during the period between in or around September 2020 and in or around January 2024, Defendant Higgins abused her position of trust at the Company by fraudulently issuing more than 50 checks totaling more than $800,000 from the Company's Carrollton Bank Account to pay personal credit card debt that she owed on her Capital One Account and on her Chase Accounts.

### B. The Execution of the Scheme

21. On or about the dates set forth below, within the Eastern District of Missouri and elsewhere, the defendant,

**KRISTINA HIGGINS**,

knowingly executed, and attempted to execute, the above-described scheme and artifice to defraud Carrollton Bank, and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of Carrollton Bank by means of material false and fraudulent pretenses, representations, and promises, in that Defendant Higgins fraudulently issued the following checks from the Company's Carrollton Bank to pay personal credit card debt that she owed on her Capital One Account and on her Chase Accounts:

| Count | Check Number | Check Amount | Check Payee | Check Date | Check Posting Date |
|---|---|---|---|---|---|
| 1 | 110643 | $9,411.96 | Capital One | October 5, 2020 | October 14, 2020 |
| 2 | 111872 | $9,907.22 | Capital One | May 28, 2021 | June 8, 2021 |
| 3 | 113375 | $10,872.32 | Capital One | March 11, 2022 | March 15, 2022 |
| 4 | 113552 | $7,563.49 | Chase | April 22, 2022 | April 26, 2022 |
| 5 | 114806 | $20,497.81 | Chase | January 4, 2023 | January 9, 2023 |
| 6 | 115426 | $17,785.56 | Capital One | May 2, 2023 | May 8, 2023 |
| 7 | 116605 | $16,848.77 | Chase | January 2, 2024 | January 8, 2024 |
| 8 | 116606 | $16,894.39 | Capital One | January 2, 2024 | January 8, 2024 |

All in violation of Title 18, United States Code, Section 1344.

## COUNT NINE
### (Aggravated Identity Theft: 18 U.S.C. § 1028A)

22. The above paragraphs are hereby realleged and incorporated by reference.

23. Between in or around September 2020 and in or around January 2024, within the Eastern District of Missouri and elsewhere, the defendant,

**KRISTINA HIGGINS,**

during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), that being bank fraud in violation of 18 U.S.C. § 1344, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, that being the name of the Company's owner, who was an authorized signatory on the Company's Carrollton Bank Account, by using a stamp to forge the signature of the Company's owner on unauthorized checks that contained the Company's address and bank account number, knowing that the means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Section 1028A.

## FORFEITURE ALLEGATION

The Grand Jury further alleges there is probable cause that:

1. Pursuant to Title 18, United States Code, Section 982(a)(2), upon conviction of an offense in violation of Title 18, United States Code, Section 1344, as set forth in Counts One through Eight, Defendant Higgins shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting, or derived from, any proceeds traceable to such violation.

2.  If any of the property described above, as a result of any act or omission of Defendant Higgins:

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with, a third party;

      c.  has been placed beyond the jurisdiction of the court;

      d.  has been substantially diminished in value; or

      e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

SAYLER A. FLEMING
United States Attorney


_____
Justin M. Ladendorf #68558MO
Assistant United States Attorney